## Joel Everett, Petitioner, *versus* Edward Walcott *et al.*

An insolvent debtor, by a bipartite deed of assignment, which was executed by the
debtor and the assignees only, assigned his property, in trust, that the assignees
should sell the same, and out of the proceeds pay, first, the expenses incurred
under the assignment, together with a reasonable compensation for their services,
and also certain debts due to them and others, and then out of the balance, the
claims of the other creditors ratably.  There was no stipulation in the assignment
for a release by the creditors, or for their becoming parties, as such.  It was *held*,
that the assignees, by executing the assignment, bound themselves both as as-
signees and as creditors ; and that, as their expenses, compensation and other
claims, would absorb the whole of the property assigned, it was protected by such
assignment, from the subsequent attachment of a dissenting creditor.

Petition for partition.   By an agreed statement of facts,
it appeared that the petitioner claimed certain proportions of
the real estate described in his petition, under an attachment
and an extent of an execution in his favor for the sum of
$2036·35, against Timothy, Samuel, and Daniel Greene ;
that the attachment was made on June 18, 1829, at half past
seven o'clock, P M. ; that in the morning of the same day,

Timothy and Samuel Greene, then composing the firm of Timothy Greene & Sons, executed a bipartite deed of assignment, by which all the real estate which they held as tenants in common, including that claimed by the petitioner, and all the personal estate held by them as copartners, was assigned to Ahab Arnold, Thomas Lefavour, Daniel Greene and William R. Staples, in trust that the assignees should sell the same, and out of the proceeds should pay and discharge the expenses of the creation and execution of the trust, together with a reasonable compensation to themselves, and also certain debts and liabilities incurred by themselves and others, in the manner and order prescribed in the assignment, and then, from the balance, should pay all sums due from the partnership to all persons whatever, if the balance should be sufficient, and if not, then in a ratable proportion ; and that there was no provision in the assignment for a release by the creditors, or for their becoming parties, as creditors.

It did not appear on the face of the assignment, or by any other writing, that any person assented to the assignment, except the assignors and assignees, before the attachment of the petitioner ; but two of the preferred creditors, Edward Walcott and Benjamin C. Harris, were present at the execution thereof, and verbally assented thereto. The assignment was recorded in the registry of deeds on June 18, 1829, at 7 o'clock A. M. The assignees immediately took possession of the property. The respondents claimed to be sole seised of the real estate in question, by virtue of a deed from the assignees, for a valuable consideration.

It appeared, that Daniel Greene was formerly one of the members of the firm of Timothy Greene & Sons, but that in the winter before the execution of the assignment, he sold out to Samuel Greene all the real and personal estate which he owned with Timothy and Samuel ; that Daniel Greene, at the time of the execution of the assignment, failed, although he did not then make an assignment.

The gross amount of the proceeds of the assigned property was $12,408·16.

The claims and liabilities of the assignees amounted to $10,200·46 ; the expenses incurred in the execution of the

trust were $1,797, making together $11,997·46 ; leaving for the payment of the compensation to the assignees for their services, $410·70. The assignees charged for their services the sum of $1,375, and thus produced a deficit of $964·30.

All questions as to the reasonableness and propriety of the expenses incurred under the assignment, were submitted to the Court.

The petitioner was to take nothing by his petition, or partition was to be ordered, as should be determined by the Court.

*Oct* 23*d.*   *Baylies* and *Cushman*, for the petitioner, cited *Widgery* v. *Haskell*, 5 Mass. R. 152 ; *Stevens* v. *Bell*, 6 Mass. R. 339 ; *Marston* v. *Coburn*, 17 Mass. R. 454 ; *Quincy* v. *Hall*, 1 Pick. 357 ; *Harris* v. *Sumner*, 2 Pick. 129 ; *Borden* v. *Sumner*, 4 Pick. 265 ; *Russell* v. *Woodward*, 10 Pick. 408.

*Warren*, for the respondents, cited *Halsey* v. *Whitney*, 4 Mason, 206.

*April term
1834,
at Taunton.*   MORTON J. delivered the opinion of the Court. Several questions of no inconsiderable practical importance, and involving a good deal of difficulty, have been raised and discussed. They will be considered so far as may be deemed necessary to the decision of the case.

Although several objections have been made to the legality of the petitioner's levy and his right to maintain this petition, yet as the respondents trace their title back to an earlier conveyance from the same source, it seems proper first to inquire into the validity of their title.

The petitioner's attachment was made on the 18th of June, 1830, at *half past seven o'clock*, *P. M.* But at an earlier hour of the same day, T. and S. Greene made a conveyance of the whole of the premises, which was recorded *at a quarter before seven o'clock A. M.* If this be valid, it necessarily supersedes the petitioner's title.

There is no complaint, that the property was not fairly and judiciously disposed of, or that any unnecessary expenses were incurred. Whether the trustees charged too much for their services or not, it cannot be pretended that the balance of $410·70 would exceed a reasonable compensation. It appears, that if the trustees hold all the estate conveyed to

hem and apply it to their own use, the ascertained value of it will not exceed their own debts and liabilities, including their expenses and a very moderate compensation for their services.

The law in relation to assignments was recently considered and revised in the case of *Russell* v. *Woodward*, 10 Pick. 408, and more recently recognised in the case of *Fall River Iron Works Company* v. *Croade & Tr.*, *ante*, 11. It cannot be expedient to reëxamine the subject, or so soon again to refer to the authorities.

It has very often and very recently been decided, that assignments by indentures tripartite, when the debts of those creditors who have become parties to them, amount to enough to absorb the whole trust fund, are valid, and vest the assigned property in the trustees, so that it cannot be attached in any form by other creditors. Where the debts of the assenting creditors amount to less than the trust fund, the assignment is held good *pro tanto*, and the residue of the assigned property is liable to attachment, either in the hands of the assignees, or if uncollected, in the hands of the debtors of the assignors, or if it remains in its original situation, by actual seizure. The assent of creditors to the assignment is not to be presumed. But the execution of the indentures by the assignees, if they are creditors, may have a double aspect, and may bind them not only as assignees, but as creditors. Better proof, either in regard to form or substance, of their assent to the assignment, could not be expected.

Now, under such circumstances, can it make any material difference, that the indenture, in form, is of two parts instead of three ? It is executed by the same parties. The evidence of assent to its provisions is equally cogent in both cases. And the consideration of course is the same. In *Russell* v. *Woodward*, 10 Pick. 408, the Court express an opinion, that the omission or insertion of a release in the indentures, has no material bearing upon the validity of the assignment. It is very obvious, that the omission of the release can have no unfavorable effect.

An insolvent debtor has a legal right to exercise a preference among his creditors, and to convey his whole property

to such as he may prefer, to the exclusion of all others. Now what difference can it make, that such creditors undertake to pay over portions of the property to others ? According to our system, it is the amount of the debts of the assignees or others who have assented to the assignment, which constitutes the legal consideration.

How these principles will be carried out, what effect they will have upon the debts of the assignees, as between them and the assignors, whether the receipt of property to the amount of the assignees' debts will extinguish them, although mostly paid over to other creditors according to the agreement of the assignors, are questions which we are not now called upon to examine or solve.

Creditors are not bound to accept in satisfaction of their debts, at its full value, property which they may not wish to purchase, or which they may not be able to hold. It is neither illegal nor inequitable for debtors, whether solvent or insolvent, to convey property to some of their creditors, in trust and with power to sell the same, and with the proceeds to extinguish the debts of themselves and others. This is very common in conditional conveyances, as mortgages. In such cases, the expenses of the sale and custody of the property, are a proper charge upon the fund, or which is the same thing, upon the debtors. And there is no more reason that the creditors should lose their time and labor, than the expenses which they have paid. Both are to be added to the debts, to constitute the true consideration of the assignment.

Upon the above principles it appears that, in the present case, the consideration was sufficient; that the assignment vested the property in the assignees; that the respondents regularly deduced their title from them ; and therefore are entitled to hold the whole estate, to the exclusion of the petitioner.

This view of the case is decisive, and renders the examination of the other questions discussed unnecessary.

*Petitioner takes nothing, &c.*